IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

DENFORD B. McIE, Jr.,

        Plaintiff,

v.                                    Civil Action No. 1:04CV48

JO ANNE B. BARNHART,
COMMISSIONER OF
SOCIAL SECURITY,
             Defendant.

## REPORT AND RECOMMENDATION
## SOCIAL SECURITY

### I.  Introduction

A.    Background

    Plaintiff, Denford B. McIE, Jr., (Claimant), filed his Complaint on March 15, 2004 seeking Judicial review pursuant to 42 U.S.C. § 405(g) of an adverse decision by Defendant, Commissioner of Social Security, (Commissioner).[1]  Commissioner filed her Answer on June 3, 2004.[2]  Claimant filed his Motion for Summary Judgment on August 16, 2004.[3]  Commissioner filed her Motion for Summary Judgment and Brief in Support Thereof on October 22, 2004.[4]  Claimant filed his Response to Commissioner's Brief in Support of Commissioner's Motion for Summary Judgment on November 2, 2004.[5]

B.    The Pleadings

---

[1] Docket No. 1.

[2] Docket No. 7.

[3] Docket No. 14.

[4] Docket No. 19.

[5] Docket. NO. 20.

<ol start="1">
<li>Claimant's Motion for Summary Judgment.[6]</li>
<li>Commissioner's Motion for Summary Judgment.[7]</li>
<li>Claimant's Response to Commissioner's Brief in Support of Commissioner's Motion for Summary Judgment.[8]</li>
</ol>

C.    Recommendation

1.    I recommend that Claimant's Motion for Summary Judgment be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED as to the issue of due process violation for reopening the favorable decision because the Fourth Circuit has held that reopening decisions is appropriate. Also, I recommend that Claimant's Motion for Summary Judgment be GRANTED and that Commissioner's Motion for Summary Judgment be DENIED as to the issue of good cause for reopening the favorable decision because the Appeals Council did not have good cause to reopen the favorable decision. Lastly, I recommend that this case be REMANDED for the ALJ to follow the Orders of the Appeals Council to obtain evidence from a medical expert to clarify the nature and severity of the Claimant's impairments for the October 14, 1998 application.

## II. Facts

A.    Procedural History

On July 1, 1992 Claimant filed his first application for disability benefits which was initially denied on September 17, 1992. On December 7, 1993 Claimant filed his second application for

---

[6] Docket No. 14.

[7] Docket No. 19.

[8] Docket. No. 20.

disability benefits which was initially denied on March 9, 1994 and Claimant subsequently withdrew his request for a hearing on November 24, 1994.

On October 14, 1998 Claimant filed his third application for Social Security Income (SSI) payments alleging disability since September 1, 1998. The application was denied initially and on reconsideration. After a hearing the ALJ's decision dated March 22, 2000 denied the claim finding Claimant not disabled within the meaning of the Act. On March 27, 2000, Claimant filed a request for review of the prior decision with the Appeals Council. Claimant then protectively filed a subsequent application for DIB on May 18, 2000. The subsequent claim was initially denied on September 11, 2000 but was then allowed on November 30, 2000 where Claimant was found to have met Listing 12.05C, with an onset disability date of May 1, 2000. On December 21, 2000 Claimant began receiving SSI payments.

On May 17, 2002, the Appeals Council granted Claimant's request for review of the third SSI application (the one filed October 14, 1998) and vacated the prior decision on the grounds that Claimant's physical and mental residual functional capacity were not clearly delineated. Also, the Appeals Council reviewed the favorable decision in the subsequent claim observing that there were a number of IQ scores that were above the required level of Listing 12.05C, and, reopened the state agency's allowance, consolidated both claims, and remanded them for further proceedings. A hearing was held on October 27, 1999 before an ALJ. The ALJ's decision dated April 14, 2003 denied the claim finding Claimant not disabled within the meaning of the Act. The Appeals Council denied Claimant's request for review of the ALJ's decision on January 29, 2004. This action was filed and proceeded as set forth above.

B.    <u>Personal History</u>

Claimant was 28 years old on the date of the January 9, 2003 hearing before the ALJ.

Claimant has a tenth grade education and past relevant work experience as a laborer.

C.     Medical History

The following medical history is relevant to the time period during which the ALJ

concluded that Claimant was not under a disability September 1, 1998 - April 14, 2003:

**Referral for MCS Review Technique 9/4/92, Tr. 115**
• I.Q. Verbal 76, Performance 85, Full Scale 78.
• Borderline I.Q.

Initial Case Referral for MCS Review and Advice (Mental)
3/2/94, Tr. 119
• I.Q. Verbal 78, Performance 92, Full Scale 82

6/17/94, Tr. 118
• Nothing new since initial denial.  Nonsevere?

**Ronald Pearse, Ed.D., 8/31/92, Tr. 130-133**
• I.Q. Verbal 76, Performance 85, Full Scale 78.
AXIS I:              No diagnosis.
AXIS II:             Borderline intellectual functioning - V40.00.
                     Specific developmental; disorder/reading - 315.00.
                     Developmental receptive language disorder - 315.31.
AXIS III:            No known medical problems.
AXIS IV:             Severity of Psychosocial stressors: Moderate.
AXIS V:              GAF: Current is 59.

**Psychiatric Review Technique, Samuel Goots, Ph.D., 9/12/92, Tr. 134-142**
• RFC Assessment necessary.
• I.Q. Verbal 76, Performance 85, Full Scale 78;
• Significantly subaverage general intellectual functioning;
• Slight restrictions daily living and social functioning;
• Often deficiencies in concentrations.  Never episodes of decompensation.

**Mental Residual Functional Capacity Assessment, Samuel Goots, Ph.D. 9/12/92, Tr. 123-146**
• Not significantly limited in 17 categories.
• Moderately limited 3 categories.

**Alex Ambroz, M.D., 2/4/94, Tr. 147-150**

4

- Chronic low back pain
- Borderline intelligence?
- Physical examination did not reveal severe deficits.

**Alex Ambroz, M.D., 2/3/94, Tr. 152-153**
- X-ray left foot - negative examination.
- X-ray right knee - negative examination.

**Ronald Pearse, Ed.D., 2/19/94, Tr. 154-**
I.Q. Verbal 78; Performance 92; Full Scale 82. (Note higher than same tester found 8/31/92)

| | | |
|---|---|---|
| AXIS I: | | No diagnosis. |
| AXIS II: | 301.90 | Personality disorder NOS (provisional). |
| AXIS III: | 315.31 | Developmental Receptive Language Disorder. |
| AXIS IV: | | Severity of psychosocial stressors, moderate. |
| AXIS V: | | GAF:  Current 60. |

**Residual Functional Capacity Assessment, 2/18/94, Tr. 159-166**

| | |
|---|---|
| PRIMARY DIAGNOSIS: | Subjective leg pain. |
| EXERTIONAL LIMITATIONS: | None established. |
| POSTURAL LIMITATIONS: | None established. |
| MANIPULATIVE LIMITATIONS: | None established. |
| VISUAL LIMITATIONS: | None established. |
| COMMUNICATIVE LIMITATIONS: | None established. |
| ENVIRONMENTAL LIMITATIONS: | None established. |

**Psychiatric Review Technique, Samuel Goots, Ph.D., 3/7/94, Tr. 167-175**
- RFC Assessment necessary.
- Significantly subaverage general intellectual functioning.
- Slight restrictions daily living and maintaining social functioning.
- Often deficiencies of concentration.
- Never episodes of deterioration or decompensation.

**Mental Residual Functional Capacity Assessment, Samuel Goots, Ph.D., 3/7/94 176-179**
- Not significantly limited 17 categories.
- Moderately limited 3 categories.

**Physical Functional Capacity Assessment, Mary Anne Shoaff, 8/30/00, Tr. 366-373**

| | |
|---|---|
| PRIMARY DIAGNOSIS: | Chondromalacia Patella left knee. |
| EXERTIONAL LIMITATIONS: | None established. |
| POSTURAL LIMITATIONS: | None established. |
| MANIPULATIVE LIMITATIONS: | None established. |
| VISUAL LIMITATIONS: | None established. |
| COMMUNICATIVE LIMITATIONS: | None established. |
| ENVIRONMENTAL LIMITATIONS: | None established. |

**Initial Case Referral for MCRS Review and Advice (Mental), 8/29/00, Tr. 374**
- I.Q. Verbal 71, Performance 74, Full Scale 70. (Note this is significantly lower than all previous evaluations.)

**Robert Hamilton, M.D., 1/29/92, Tr. 390**
- Claimant has a learning disability and is unable to read or write above second grade level.

**Fairmont General Hospital, 11/21/85, Tr. 392**
- Chest X-Ray: Normal chest.

**Praphui Hisra, M.D., 11/13/98, Tr. 403**
- Impaired mental status.
- Arthralgia involving bilateral hips as well as knee joints.

**Ronald D. Pearse, Ed.D., 11/16/98, Tr. 404-406**

AXIS I:  V71.09  No diagnosis.
AXIS II:  V62.89  Borderline intellectual functioning.
AXIS III:  Arthritic pain.

**Residual Physical Functional Capacity Assessment, 12/29/98, Tr. 407-414**

PRIMARY DIAGNOSIS:  Right hip slight subluxation.
EXERTIONAL LIMITATIONS:  Occasionally 50 lbs., frequently 25 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:  All frequently.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:  None.
COMMUNICATIVE LIMITATIONS: None Established.
Environmental Limitations: Unlimited except avoid concentrated exposure to extreme cold.

**Psychiatric Review Technique, Samuel Goots, Ph.D., 12/30/98, Tr. 415-423**
- Medical Disposition Impairments not severe.
- Borderline intellectual functioning.
- No restrictions on daily living or social functioning.
- Seldom deficiencies of concentration.
- Never episodes of deterioration or decompensation.

**Residual Physical Functional Capacity Assessment, Cynthia Osborne, 3/26/99, Tr. 424-431**

PRIMARY DIAGNOSIS:  Bilateral hip pain.
SECONDARY DIAGNOSIS:  Arthralgia.
EXERTIONAL LIMITATIONS:  None established.
POSTURAL LIMITATIONS:  None established.
MANIPULATIVE LIMITATIONS:  None established.
VISUAL LIMITATIONS:  None established.
COMMUNICATIVE LIMITATIONS: None established.

ENVIRONMENTAL  LIMITATIONS: None established.

**Roberto Conanan, M.D., 10/22/98, Tr. 439-440**
Left hip:       Slightly irregularity, small spur, femur head, slight sublaxation, slight
                narrowing hip joint.
Left knee:      No significant bony abnormality.
Right hip:      Slight sublaxation lower aspect femur head.
Right knee:     No significant bony abnormality.

**Psychological Evaluation, 3/5/84, Tr. 441-443**
•       I.Q. Verbal 91, Performance 80, Full Scale 84.

**Dr. Lucatic, 10/6/99, Tr. 448-453**
•       No environmental restrictions.
•       Frequently lift 10 lbs., occasionally lift 20 lbs.
•       Occasionally walking, standing, sitting, climbing.
•       Occasionally carry 10 lbs., pushing, pulling, bending, kneeling, foot controls, driving.
•       Frequently reaching, handling, grasping.
•       No restrictions seeing, hearing, speaking, shortness of breath, weakness except back and
        hips due to pain.
•       Chronic depression, personality disorder.
•       Pain is 5 on scale of 1 to 10.

**Pravin I. Patel, M.D., 11/23/99, Tr. 455**
•       Chronic low back pain, arthritis of the hips and knee joint, impaired mental status.

**Medical Assessment of Ability to do Work-Related Activities, 11/23/99, Tr. 457-459**
No more than 10-20 lbs. lifting and carrying for 1/3 of an 8 hour day; stand less than one hour.
Tingling in legs when sitting.
POSTURAL LIMITATIONS:           All occasionally.
PHYSICAL FUNCTIONS:                     No affect on reaching, handling, pushing, pulling, seeing,
hearing, speaking.  Limited feeling.
ENVIRONMENTAL LIMITATIONS: None, except humidity and temperature extremes.

**WVU Psychiatric Evaluation, 12/2/99, Tr. 460-464**
AXIS I:         None.
AXIS II:        Borderline Intellectual Functioning; reading disorder; learning disorder.
AXIS III:       By history and report arthritis.
AXIS IV: Psychosocial and environmental stressors include an inability to read and therefore an
inability to get a job and difficulty helping his daughter, etc.
AXIS V:                 55.

**Medical Assessment of Ability to do Work-Related Activities (Mental), 12/2/99, Tr. 465-467**
Making occupational adjustments:        All fair.

Making performance adjustments:    2 poor, one good/fair.
Making personal social adjustments: All fair, except poor reliability.

**Psychiatric Review Technique, 8/30/00, Tr. 479-487**
- Residual Functional Capacity Assessment necessary.
- Borderline intellectual functioning, disruptive behavior, moderate restrictions daily living, social functioning, concentration.  No episodes of deterioration or decompensation.

**Mental Residual Functional Capacity Assessment, 8/30/00, Tr. 489-492**
Not significantly limited:       12 categories.
Moderately limited:           8 categories.

**WVU Radiology Report, 9/29/00, Tr. 495-496**
- MRI Cervical - Findings consistent with broad-based disc bulge at the C6-C7 level that minimally effaces the anterior aspect of thecal sac, however does not displace the cord nor contribute to compromise of the neural foramen.
- MRI Lumbosacral - Unremarkable Magnetic Resonance Imaging of the lumbrosacral spine.

**Dale Luketich, M.D., 8/23/00, Tr. 500**
- This is a 26-year old right-handed male who presents to us with chronic back pain in the left sacroiliac radiating to the left leg with ankle numbness.  The exam reveals generalized dryness of the skin with patchy hair loss, intact high mental functions with intact cranial nerves, sensory exam with loss of temperature around the right leg with dysesthesia and pain and vibration, sensation as pin prick on the left ankle.  Motor functions are intact with brisk reflexes and downgoing plantars.

**Jennifer Robinson, M.A., 8/21/00, Tr. 500-512**
I.Q. Verbal 71, Performance 74, Full Scale 70.
AXIS I:        312.09         Disruptive Behavior Disorder, NOS.
AXIS II:       V62.89         Borderline Intellectual Functioning.
AXIS III:      By Self-Report:      Back and leg pain, by self-report.

**Psychiatric Review Technique, 11/27/00, Tr. 517-530**
12.05         Meets listing 12.05C a valid verbal, performance, on full scale I.Q. of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.
12.08         Disruptive Behavior Disorder, NOS that does not precisely satisfy the diagnostic criteria above; mild restrictions on daily living and concentration; moderate difficulty social functioning, one or two repeated episodes of decompensation.

**Physical Residual Functional Capacity Assessment, 11/21/00, Tr. 532**
PRIMARY DIAGNOSIS:              Chronic cervical and lumbar strain.

EXERTIONAL LIMITATIONS:     Occasionally 50 lbs., frequently 50 lbs., stand or walk 6 of 8 hours, sit 6 of 8 hours, unlimited push and pull.
POSTURAL LIMITATIONS:          All frequently.
MANIPULATIVE LIMITATIONS:  None Established.
VISUAL LIMITATIONS:               None Established.
COMMUNICATIVE  LIMITATIONS: None Established.
ENVIRONMENTAL  LIMITATIONS: None Established.

**Praven Patel, M.D., 9/18/02, Tr. 551-52**
•     Chronic low back pains.
•     Osteoarthritis.
•     Degenerative disk disease.
•     Learning disabilities.

**Fairmont Clinic, 9/18/02, Tr. 553**
X-Ray lumbar spine - No significant bony abnormality demonstrated.
Roberto A. Cunanan, M.D./eeh                    D&T: 09-19-02

**Medical Source Statement of Ability to do Work-Related Activities (Physical)**
**Pravin Chandra Patel, 9/18/02, Tr. 556-559**
Exertional Limitations: Occasionally 10 lbs., frequently less than 10 lbs., stand or walk 2 of 8 hours; sit less than 6 of 8 hours, pushing and pulling limited in upper and lower extremities.
POSTURAL LIMITATIONS:          All occasionally.
MANIPULATIVE LIMITATIONS:  Limited fingering and feeling, unlimited reaching and handling.
VISUAL LIMITATIONS AND COMMUNICATIVE  LIMITATIONS: Unlimited.
ENVIRONMENTAL LIMITATIONS: Limited temperature extremes, vibration, humidity hazards, unlimited noises dust, fumes.

**Jennifer Robinson, M.A., 9/12/02, Tr. 561-566**
I.Q. Verbal 79, Performance 84, Full Scale 79.
AXIS I:          (300.02) Generalized anxiety disorder.  (303.90) Alcohol dependency, in sustained full remission.
AXIS II:          (V62.89) Borderline intellectual functioning.
AXIS III:          Leg pain with arthritis, by self-report.

**Medical Source Statement of Ability to do Work-Related Activities, 9/10/02, Tr. 567-568**
Slight:          Remember instructions, carry out instructions, make judgments.
Moderate:          Understand detailed instructions, interact approximately with public, supervisors, co-workers. Respond to changes in routine.
Marked:          Carry out detailed instructions; respond appropriately to work pressures.

D.  Testimonial Evidence
1. Claimant

9

Testimony was taken at the hearing from Claimant, who testified as follows (Tr. 637, 639-40):

Q      Why did that job end?

A      Because I started getting knots in my legs and stuff like that there.  The leg wouldn't keep going.  Because I had to quit just because I couldn't keep going because of my leg.  My leg started hurting.  It was swelling up.

Q      Um-hum.  Did - -

                              *               *               *

Q      Okay.  How about your physical condition?  Would you describe it for us?

A      As far as the physical goes, my leg still hurts.  It's got - - it's now to where I don't drive a standard vehicle.  It just thumps.  It just went from a swelling to a headache effect in the leg though instead of the head.  It just kind of swells like that.

Q      Which leg?

A      The left.

Q      And how often does that - - this problem occur?

A      Daily.  It's a daily thing now to where I've asked them to amputate it but they're not allowed because they said that it's a, you know, even if they did amputate it the pain would still be there.  So - - but I feel if they would amputate it would be better for me but they said even without the limb that the pain would still be there.

Q      Is there anything that you can do to relieve the pain?

A      Just - - like, sometimes if you lay a certain way it will let up.  And if you set a certain way it lets up.  But if you set too long or lay too long, either one of them ways, you still

have to move around because it just - - it starts going numb first and them you can stop the pain if you can kind of just get rid of the numbness before the pain comes. It's kind of based on that. It depends, if I lay there while it's numb or something then it will increase the hurt more if I don't, you know, do something, move around.

Q    Um-hum. What - - do you have any other physical problems besides the pain in your leg that you're describing?

A    Just I'm paranoid but that's where it goes with the doctor's going to have me go to a counselor and stuff like that.

Q    Do you have pains in any other part of your body?

A    The lower back on the - - towards the hip side there, on the left-hand side of my back.

Q    Okay. And how often do you have that?

A    It's just constant with the leg. It keeps me from bending over, hard picking up my daughter or anything like that there.

## 2. Vocational Expert

Testimony was taken at the hearing from Vocational Expert, who testified as follows (Tr.564-58):

Q    All right. Let me ask you then to assume a hypothetical individual of the Claimant's age, educational background and work history who would be able to perform a range of light work, would require a sit/stand option, could perform all postural movements occasionally except could not squat or climb ladders, ropes or scaffolds, should not be exposed to temperature extremes, humidity or environmental pollutants, should work in a low stress

environment with no independent decision making responsibilities, would be limited to work that is unskilled and involves routine and repetitive tasks and no reading, should have no more than occasional interaction with other persons.  Would there be any work in the regional or national economy that such a person could perform?

A        Yes, Your Honor.  At the light level, laundry folder, light, 50,000 nationally, 650 regionally.  And the region's West Virginia, Eastern Ohio, Western Pennsylvania and Western Maryland.  And small parts assembler, light.  1.2 million nationally, 12,000 regionally but I would reduce those numbers by half, Your Honor, because some of those have high production quotas.

Q        Okay.

A        - - associated with.

Q        And if you would reduce the exertional level to sedentary and retain the other limitations.

A        Okay.  Machine tender, sedentary, 141,000 nationally, 1,400 regionally.  And general office clerk doing some routine, repetitive things like just copying or addressing, that would be the total number available is 299,000 nationally, 2,900 regionally.

Q        That office clerk job wouldn't involve any reading then?

A        Well, actually I would have to eliminate that.  I put that up here, Your Honor, I didn't include that.

Q        Okay.

A        Because with the addressing and things you'd have to do that.

Q        Right.

A    There are some assembler jobs at the sedentary level. The total number available is 149,000 and 1,450 regionally but I would have the same reduction at those.

Q    Okay.

A    At 50 percent.

ALJ    All right. Counselor, you may inquire.

ATTY    Thank you, Your Honor. Mr. Bell, all these jobs were specified to have a sit/stand option.

VE    Correct.

ATTY    And so that means a person can sit or stand at will, is that how you understand that?

VE    It would be at will at the sedentary and pretty much at the light for the small parts assembler. The laundry folder it would be, like, you might have to stand for - - sit for a few minutes and get a break and then stand back up to meet the requirements of that job.

ATTY    Okay.

WTN    Can I say something?

ALJ    Not right now.

WTN    Okay.

ATTY    Could I consult with her, Your Honor?

ALJ    Sure.

ATTY    So basically the laundry job is a job that you have to stand to perform?

VE    You'd have to be able to stand six of eight but with the sit/stand option there is - - you could sit for a few minutes and then get a break and stand.

ATTY          Okay.  But for all of these jobs the combination of sitting and standing would have to equal eight hours of one or the other?

VE            Yeah.

ATTY          Okay.  Let me ask you a hypothetical based on Exhibit B-25F and ask you if a person could perform any gainful, full-time employment if they were only able to stand and, or walk for two hours in an eight hour work day and sit for less than six hours in an eight hour work day?  Therefore the combination of sitting, standing and walking would be less than eight hours for that.

VE            That wouldn't allow for a competitive schedule, I believe.

ATTY          Okay.  That's the only question I have, Your Honor.

ALJ           All right.

ATTY          If I could - -

ALJ           Let me just ask - - well, let me ask, Mr. Bell, whether anything in your testimony was inconsistent with anything in the DOT?

VE            No, Your Honor.

ALJ           All right.  Now was there something else you wanted to cover?

ATTY          I just wanted to point out, the remand talks in some length about Exhibit B-11F which is from Dr. Lucatec.

ALJ           Yes.

ATTY          And basically my position was that he was saying the same - - he was saying that the sitting, standing and walking combined was less than eight hours.  And Judge Banas and I guess the Appeals Council - - well, Judge Banas disagreed with me.  The Appeals

Council said it was unclear. And the interesting I would like - - just think it's interesting anyway is that the DDS position, Dr. Patel [phonetic] in Exhibit B-25F, clarified that.

ALJ          Um-hum.

ATTY          And basically this is one of those remands where the issuing remand has been directly answered. His exhibit would indicate less than an ability - - it adds up to less than eight hours.

ALJ          Yeah. If you accept that, that's correct. Right.

ATTY          Yes. I would submit there's no reason not to accept Dr. Patel's assessment.

ALJ          Okay. Was there anything relating to what she had to say that you wanted to - -

ATTY          She pointed out that she used to work in laundry and you had to stand to fold the laundry.

ALJ          Okay.

                              *                    *                    *

  E.          Lifestyle Evidence

The following evidence concerning the Claimant's lifestyle was obtained at the hearing and through medical records. The information is included in the report to demonstrate how the Claimant's alleged impairments affect his daily life.

•          Watches television. (Tr. 641).

•          Had a substance abuse problem. (Tr. 590).

## II. The Motions for Summary Judgment

A.    Contentions of the Parties

Claimant contends that the ALJ's decision is not supported by substantial evidence. Specifically, Claimant asserts that the Appeals Council violated Claimant's due process rights when it reopened the November 30, 2000 decision.  Also, Claimant maintains that the Appeals Council did not have good cause to reopen the favorable decision.  Lastly, Claimant argues that the ALJ failed to follow the order of the Appeals Council to obtain evidence from a medical expert to clarify the nature and severity of the Claimant's impairments for the October 14, 1998 application.

Commissioner maintains that the ALJ's decision was supported by substantial evidence. Specifically, Commissioner contends that the Appeals council did not violate Claimant's due process rights by reopening the November 30, 2000 decision.  Also, Commissioner maintains that the Appeals Council had good cause to reopen the favorable decision.  Lastly, Commissioner argues that it was not necessary for the ALJ to obtain medical expert testimony in this case.

B.    The Standards.

1.    Summary Judgment.    Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of showing the absence of any issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  All inferences must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec.  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue

for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

2.  <u>Judicial Review</u>. Only a final determination of the Commissioner may receive judicial review. <u>See</u> 42 U.S.C. §405(g), (h); <u>Adams v. Heckler</u>, 799 F.2d 131,133 (4th Cir. 1986).

3.  <u>Social Security - Medically Determinable Impairment - Burden</u>. Claimant bears the burden of showing that she has a medically determinable impairment that is so severe that it prevents her from engaging in any substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(1), (d)(2)(A); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460 (1983).

4.  <u>Social Security - Medically Determinable Impairment</u>. The Social Security Act requires that an impairment, physical or mental, be demonstrated by medically acceptable clinical or laboratory diagnostic techniques. 42 U.S.C. § 423(d)(1), (3); <u>Throckmorton v. U.S. Dep't of Health and Human Servs.</u>, 932 F.2d 295, 297 n.1 (4th Cir. 1990); 20 C.F.R. §§ 404.1508, 416.908.

5.  <u>Disability Prior to Expiration of Insured Status- Burden</u>. In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status. <u>Highland v. Apfel</u>, 149 F.3d 873, 876 (8th Cir. 1998) (citing 42 U.S.C. §§ 416(i), 423(c); <u>Stephens v. Shalala</u>, 46 F.3d 37, 39 (8th Cir.1995)).

6.  <u>Social Security - Standard of Review</u>. It is the duty of the ALJ, not the courts, to make findings of fact and to resolve conflicts in the evidence. The scope of review is limited to determining whether the findings of the Secretary are supported by substantial evidence and whether the correct law was applied, not to substitute the court's judgment for that of the Secretary. <u>Hayes v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).

7.  <u>Social Security - Scope of Review - Weight Given to Relevant Evidence</u>. The Court must address whether the ALJ has analyzed all of the relevant evidence and sufficiently explained his

rationale in crediting certain evidence in conducting the "substantial evidence inquiry." Milburn Colliery Co. v. Hicks, 138 F.3d 524, 528 (4th Cir. 1998). The Court cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence. Gordon v. Schweiker, 725 F.2d 231, 235-36 (4th Cir. 1984).

8.     Social Security - Substantial Evidence - Defined.   Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

9.     Social Security - Sequential Analysis.   To determine whether Claimant is disabled, the Secretary must follow the sequential analysis in 20 C.F.R. §§ 404.1520, 416.920, and determine: 1) whether claimant is currently employed, 2) whether she has a severe impairment, 3) whether her impairment meets or equals one listed by the Secretary, 4) whether the claimant can perform her past work; and 5) whether the claimant is capable of performing any work in the national economy. Once claimant satisfies Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have listed impairments but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job. Rhoderick v. Heckler, 737 F.2d 714-15 (7th Cir. 1984).

10.  Social Security - Reopening a final decision.   The fourth circuit has taken the view that the Appeals Council is empowered to re-open initial determinations. Zimmerman v. Heckler, 774 F.2d 615, 617 (4th Cir. 1985).

11.  Social Security - Good Cause to Reopen a Final Decision - The Appeals council may reopen a case within 12 months for any reason or within 2 years of the date of the notice of initial

determination if good cause exists. § 416.1488(2)(a)-(b). There is good cause to reopen a determination if 1) new and material evidence is furnished; 2) a clerical error was made; or 3) the evidence that was considered in making the determination clearly shows on its face that an error was made. 20 C.F.R. 416.1489(a). "We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." 20 C.F.R. 416.1489(b).

C.    Discussion

1. Due Process

Claimant asserts that 20 C.F.R. 416.1487 which allows the reopening and revising of otherwise final and binding determinations for two years after the determination is made without due notice to any claimant is a violation of every claimant's due process rights. Commissioner counters that Claimant's due process rights were preserved by the Commissioner in reopening the favorable determination of November 30, 2000.

> "Generally, if you are dissatisfied with a determination or decision made in the administrative review process, but do not request further review within the stated time period, you lose your right to further review and that determination or decision becomes final. However, a determination or a decision made in your case which is otherwise final and binding may be reopened and revised by us."

§ 416.1487(2)(a).

> "We may reopen a final determination or decision on our own initiative, or you may ask that a final determination or a decision to which you were a party be reopened. In either instance, if we reopen the determination or decision, we may revise that determination or decision. The conditions under which we may reopen a previous determination or decision, either on our own initiative or at your request, are explained in §416.1488."

§ 416.1487(2)(b).

> "A determination, revised determination, decision, or revised decision
> may be reopened—
>
> (a) Within 12 months of the date of the notice of the initial determination,
> for any reason;
>
> (b) Within two years of the date of the notice of the initial determination
> if we find good cause, as defined in §416.1489, to reopen the case; or
>
> (c) At any time if it was obtained by fraud or similar fault. In determining
> whether a determination or decision was obtained by fraud or similar fault,
> we will take into account any physical, mental, educational, or linguistic
> limitations (including any lack of facility with the English language) which
> you may have had at the time."

§ 416.1488(2).

On October 14, 1998 Claimant filed his third application for Social Security Income (SSI)

payments alleging disability since September 1, 1998.  The application was denied initially and

on reconsideration.  After a hearing the ALJ's decision dated March 22, 2000 denied the claim

finding Claimant not disabled within the meaning of the Act.  On March 27, 2000, Claimant filed

a request for review of the prior decision with the Appeals Council.  Claimant then protectively

filed a subsequent application for DIB on May 18, 2000.  The subsequent claim was initially

denied on September 11, 2000 but was then allowed on November 30, 2000 where Claimant was

found to have met Listing 12.05C, with an onset disability date of May 1, 2000.  On December

21, 2000 Claimant began receiving SSI payments.  On May 17, 2002, the Appeals Council

granted Claimant's request for review of the third SSI application (the one filed October 14,

1998) and vacated the prior decision on the grounds that Claimant's physical and mental residual

functional capacity with not clearly delineated. Also, the Appeals Council reviewed the favorable decision in the subsequent claim observing that there were a number of IQ scores that were above the required level of Listing 12.05C, and, reopened the state agency's allowance, consolidated both claims, and remanded them for further proceedings.

Claimant argues that allowing the reopening of a decision does not hold the Commissioner to the same time restraints regarding administrative finality that a Claimant is held to. Also, Claimant argues that allowing the Commissioner to secretly reserve the right to change her mind for a period of years without letting the Claimant know at the onset that such a right has been reserved violates due process.

The fourth circuit has taken the view that the Appeals Council is empowered to re-open initial determinations. Zimmerman v. Heckler, 774 F.2d 615, 617 (4th Cir. 1985). Therefore, the Appeals Council did not err when it reopened Claimant's favorable decision.

## 2. Good Cause

Claimant maintains that the Appeals Council erred in re-opening the November 30, 2000 decision because no good cause existed for the re-opening. Commissioner counters that good cause existed to reopen the favorable decision of November 30, 2000.

The Appeals council may reopen a case within 12 months for any reason or within 2 years of the date of the notice of initial determination if good cause exists. § 416.1488(2)(a)-(b). The initial favorable decision was made on November 30, 2000. The Appeals council re-opened the favorable decision on May 17, 2002. Because the Appeals council re-opened the favorable decision more then 12 months after the initial determination good cause was required to re-open

the November 30, 2000 decision.

There is good cause to reopen a determination if 1) new and material evidence is furnished; 2) a clerical error was made; or 3) the evidence that was considered in making the determination clearly shows on its face that an error was made. 20 C.F.R. 416.1489(a). "We will not find good cause to reopen your case if the only reason for reopening is a change of legal interpretation or administrative ruling upon which the determination or decision was made." 20 C.F.R. 416.1489(b).

The Appeals Council does not allege any of the above reasons for good cause in when it reopened Claimant's favorable decision. (Tr. 252-54). Commissioner argues that the Appeals Council found that the evidence that was considered in making the favorable decision clearly showed on its face that an error was made. (Defendant's Motion for Summary Judgment p. 8). The Appeals Council stated that it was reopening the decision because the favorable decision finds that Claimant meets Listing 12.05C while the previous claim does not discuss or evaluate Listing 12.05. Also, the Appeals Council noted that Claimant's favorable decision was based in part on IQ scores of 60 through 70 and in other part on significant secondary physical as well as mental impairments. The Appeals Council further noted that the record shows higher IQ scores in the past. (Tr. 253). Claimant states that the state agency psychologist had at least two of those previous tests before him and still concluded that Claimant met Listing 12.05C and that Claimant's additional significant mental impairments satisfied part B of 12.05C. (Tr. 527, 529). The ALJ not discussing a certain Listing in a previous case and the fact that higher IQ test scores existed in the past is not clear evidence on its face that an error was made. Therefore, the Appeals Council did not have good cause to reopen Claimant's favorable decision of November 30, 2000.

It is recommended that the November 30, 2000 decision awarding benefits to Claimant be reinstated immediately and that Commissioner be ordered to pay any past-due benefits from May 2000 to the present that have been withheld from Claimant based on the improper reopening of the November 30, 2000 decision.

### 3.  Medical Expert Testimony

Claimant maintains that the ALJ erred by failing to obtain the testimony of a medical expert as ordered by the Appeals Council.  Commissioner counters that it was not necessary for the ALJ to obtain medical expert testimony.

"The Administrative law Judge shall take any action that is ordered by the Appeals Council and may take any action that is not inconsistent with the Appeals Council's remand order."  20 C.F.R. 404.977.   On May 17, 2002 the Appeals Council ordered that "[u]pon remand, the Administrative Law Judge will: . . . Obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairments (20 C.F.R. 416.927(f) and Social Security Ruling 96-6p).  Commissioner argues that the Appeals Council directed the ALJ to obtain medial expert evidence based on the evidence in the record at the time of its remand order, but, the record was not the same at the time of the ALJ's April 14, 2003 decision.   However, Commissioner does not specify which new evidence was available subsequent to the Appeal Council's order that made the ALJ determine that he no longer required evidence form a medical expert to clarify the nature and severity of the Claimant's impairments.  Therefore, this case should be Remanded for the ALJ failed to follow the Orders of the Appeals Council to obtain evidence from a medical expert to clarify the nature and severity of the Claimant's impairments for the October 14, 1998 application.

## IV. Recommendation

For the foregoing reasons, I recommend that Claimant's Motion for Summary Judgment be DENIED and that Commissioner's Motion for Summary Judgment be GRANTED as to the issue of due process violation for reopening the favorable decision because the Fourth Circuit has held that reopening decisions is appropriate. Also, I recommend that Claimant's Motion for Summary Judgment be GRANTED and that Commissioner's Motion for Summary Judgment be DENIED as to the issue of good cause for reopening the favorable decision because the Appeals Council did not have good cause to reopen the favorable decision. Lastly, I recommend that this case be REMANDED for the ALJ to follow the Orders of the Appeals Council to obtain evidence from a medical expert to clarify the nature and severity of the Claimant's impairments for the October 14, 1998 application.

Any party who appears *pro se* and any counsel of record, as applicable, may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to parties who appear *pro se* and any counsel of record, as applicable.

DATED: June 21, 2005

/s/ James E. Seibert

JAMES E.  SEIBERT
UNITED STATES MAGISTRATE JUDGE